## THE STATE v. MANUEL FULLER, Appellant.

Division Two, December 31, 1924.

1.   **EMBEZZLEMENT: Larceny: Possession and Conversion.**   If a per-
son honestly receives possession of money upon any trust, ex-
pressed or implied, and after receiving it fraudulently converts it
to his own use, he may be guilty of embezzlement, but not of

State v. Fuller.

larceny. If the possession is fraudulently obtained, with intent on the part of the person obtaining it, at the time he receives it, to convert it to his own use, and the person parting with it intends to part with the possession merely, and not with his title to the property, the offense is larceny.

2. ———: ———: **Venue.** Before the defendant could be convicted of embezzlement in the county in which indicted, the State must offer proof, direct or circumstantial, that he received the money honestly and thereafter and in such county converted the same to his own use; and where there is testimony that defendant received the money honestly in the county in which he was indicted, but none whatever that he formed the intent in that county to convert it to his own use, but did afterwards form such intent in another county and there converted it to his own use, his conviction of embezzlement cannot stand. But there being testimony tending to show that, before he got possession of the money, defendant planned to get prosecutrix to turn it over to him and to convert it to his own use, and therefore did not honestly obtain possession of it, but had an intention to steal it at the time he received it, he may be convicted of larceny in the county in which he formed such criminal intention and obtained possession of the money, though he did not actually convert it to his own use until after both had gone into another county.

Citations to Headnotes: 1, **Embezzlement,** 20 C. J. par. 3; 2, **Criminal Law,** 16 C. J. par. 1572, and **Indictment and Informations,** 31 C. J. par. 439.

Appeal from Adair Circuit Court.—*Hon. James A. Cooley,* Judge.

REVERSED AND REMANDED.

*Matthews & Jones* for appellant.

(1) It is essential that the indictment lay the venue and approximately state the time of the conversion. 15 Cyc. 525. (2) Embezzlement is a fraudulent appropriation of another's property by a person to whom it has been entrusted or into whose hands it has lawfully come. It differs from larceny in that the original taking of the property was lawful or with the consent of the owner while in larceny the felonious intent must have existed at the time of the taking. Moore

v. United States, 160 U. S. 268. In the case at bar, there is not a scintilla of evidence of any misappropriation until the parties were in Jackson County, consequently the Circuit Court of Adair County had no jurisdiction. (3) It is held in order to constitute embèzzlement the accused must be shown to have fraudulently converted the money or fraudulently concealed it. In the case at bar, there is no evidence whatsoever of a conversion or a hint at a conversion before the demand was made, and that was then only an intent, because the evidence shows that the money was put in the bill-fold, kept there, the prosecuting witness was with the accused all the time and the money was still in the bill-fold at the time of the demand in Kansas City. Consequently, the time of demand was the first proof of any intent to convert the property and an actual conversion has never been shown.

*Jesse W. Barrett,* Attorney-General, and *Ellison A. Poulton,* for respondent.

(1) Under the instructions given the jury were required to find that all the elements of embezzlement were committed in Adair County. State v. Britt, 278 Mo. 510; State v. Scott, 256 S. W. 746; State v. Buck, 186 Mo. 15, 2 Ann. Cas. 1007. (2) The fact that demand for the return of the money was made in Jackson County is not conclusive. It does not follow that the refusal there meant that the conversion and intent occurred there. Demand is not necessary to the proof of embezzlement; demand and refusal are simply evidence of the crime. Intent, and the time it first occurred, is a question for the jury. State v. Britt, 278 Mo. 510. (3) Under the instructions the jury necessarily found against appellant's contention that the embezzlement, if any, occurred in Jackson County. (4) Absent a confession or statement by appellant, direct evidence of when the intent to embezzle first formed in

his mind is unobtainable.    The jury must necessarily infer from all the facts and circumstances proven.    (5) Proof of venue, like any other material fact, need not be established by express or positive testimony, but it is sufficient if the circumstances in evidence tend to the conclusion, in a manner satisfactory to the jury, that the place of the crime corresponds with that set forth in the indictment.    State v. Murray, 193 S. W. 831; State v. Daugherty, 106 Mo. 182;    State v. Shour, 196 Mo. 223; State v. McCawley, 180 S. W. 871;    Keys v. State, 112 Ga. 392.

DAVID E. BLAIR, P. J.—Defendant was convicted in the Circuit Court of Adair County of the crime of embezzling $1000 belonging to Mrs. Anna Behrbam, which money defendant had received as bailee and converted to his own use.    Defendant was sentenced to imprisonment in the state penitentiary for a term of five years, in accordance with the verdict of the jury, and has appealed.

Since we have concluded that the conviction cannot stand, for reasons to be hereafter stated, it will be necessary to state only enough facts to understand our action in reversing the judgment.    The statement of facts contained in respondent's brief is sufficient for our purpose and we quote therefrom, as follows:

"The evidence for the state tended to prove the following:

"In the spring of 1922 Mrs. Anna Behrbam was a widow with several children, and resided in Kirksville, Missouri.    She was introduced to the defendant, who thereafter called upon her and soon began to propose marriage.    He told her that he was a good trader and made lots of money and persuaded her to loan him different sums of money at different times and to sign his notes as surety.    He did not realize as much as he and she expected him to on his trades, and began talking of going to Butte, Montana, near which he claimed to

have a ranch. He said that he did not want to marry in Kirksville, because he had a divorced wife living there, and for that reason would prefer to be married in Kansas City.

"Mrs. Behrbam sold her furniture and the stock she had on her place and made ready to accompany him. They went to Macon, Missouri, and while there he decided that it would be better to reside in that town than to go West. She advanced money to pay for furniture. A few days later he changed his mind, and they planned again to go West. She took her children and went on to Kansas City, where he promised to meet her shortly after he had settled up some business matters. He afterwards joined her there and persuaded her that she should go back to Kirksville to sell her house and ground, so that she would have nothing to draw her back to Kirksville after reaching Montana. She accompanied him back to Kirksville, where he negotiated the sale of her property for $800, and on June 20, 1922, the purchase price was paid in currency. While at the station in Kirksville waiting for the train to take them to Kansas City she laid the $800 in bills and $200 which she already had from the sale of other property, in her lap and counted it. He asked her how she was going to carry it, and she replied that she thought she would pin it in the front of her dress; he told her that he thought it would not be safe to carry that much money pinned in her dress, and told her that he had a good bill-fold and that it would be safer with him than with her, and said, 'Surely you will trust a man you are going to marry?' She replied, 'I would hate to think I couldn't.' She handed him the money, and after placing it in his bill-fold he put it in his pocket, saying that he would return the money as soon as they got to Kansas City.

"Upon arriving in Kansas City he told her that he couldn't marry her that day because he had married another girl after divorcing the one then living in

Kirksville, and that he would have to divorce the second wife before he could marry her. She told him she wanted the money back right away, and went to another. room for a few minutes; when she came back one of the children said that the defendant had left, remarking that he would go out to buy a cigar and that he would be back right away.

"He was not seen again until September; the money never was returned. Upon seeing him in September he first told her that he had invested the money and that in the next three weeks he would have it for her; later he told her that he was going to marry another woman who had a rooming-house, and that after marrying she could have the rooming house to re-place her $1000. One witness testified that while the defendant was going with Mrs. Behrbam he told the witness that 'he didn't care much for the woman, but that he was going to get her money and leave the woman setting flat.' .

"The defendant testified in his own behalf that for six or seven months before the date of the alleged embezzlement he and Mrs. Behrbam lived together as husband and wife and that he supported her and her children during that time. That he borrowed money from her from time to time to finance the purchase of stock, and that the money he realized from the sale of the same was spent upon himself and Mrs. Behrbam and her family for living and traveling expenses. That he got no separate benefit from any of the money. That at one time he worked in the Kansas harvest. fields, and spent the sum realized from that in the support of Mrs. Behrbam and her family. That on the 20th day of June, 1922, he came to Kirksville with Mrs. Behrbam to help her dispose of her property, and that he did not see the $800 and $200 in her lap in the station just before the train came, and that he did not get the $1000 or any part of it. That he bought the railroad ticket at Kirks-

ville to LaPlata, and from thence to Kansas City. That he never told anyone that he didn't care anything for her and that he was going to get her money and leave her flat. That he really cared for her and intended to marry her as soon as he could get a divorce from his second wife. That he never did take any of her money and appropriate it to his own use. That she knew that he was married and that it would be impossible for him to marry her until he procured a divorce from his second wife. That he did not marry her, because, after the divorce was procured, some time in September, 1922, she had taken up with another man.

"Mrs. Behrbam's daughter testified in rebuttal that the defendant and her mother did not live together as man and wife at any time before or after June 20, 1922."

Defendant contends that no case was made for the jury because the state failed to show that the alleged embezzlement occurred in Adair County. In this view, we concur.

It is true that venue may be shown by circumstantial evidence. However, there must be *such circumstances in evidence*, and we think they are not in evidence here. If the evidence shows that any crime was committed by defendant in Adair County, it was the crime of larceny and not that of embezzlement. This court has frequently quoted approvingly from Commonwealth v. Barry, 124 Mass. 325, wherein it was said: "If a person *honestly* receives the possession of the goods, chattels or money of another upon any trust, express or implied, and, *after receiving them*, fraudulently converts them to his own use, he may be guilty of the crime of embezzlement, but cannot be of that of larceny. . . . If the possession is *fraudulently* obtained, with intent on the part of the person obtaining it, *at the time he receives it*, to convert the same to his own use, and the person parting with it intends to part with his possession merely, and not with his title to the

property, the offense is larceny''— Italics ours. [State·
v. Buck, 186 Mo. 15, l. c. 19;  State v. Scott, 256 S. W.
(Mo. Sup.) 745.]

Before the defendant could be convicted of embezzle-
ment in Adair County, the State must offer proof, direct
or circumstantial, that defendant received the money
honestly, and thereafter and in Adair County converted
same to his own use.   There is testimony tending to
show that, before he got possession of Mrs. Behrbam's
money, defendant planned to get her to turn it over to
him and to convert it to his own use.   If this testimony
was believed by the jury, the defendant did not receive
the money into his possession honestly, but had an
intention to steal it at the time he received it and, if
guilty of any crime, was guilty of larceny.   But he was
convicted of embezzlement.

If the jury found that defendant received the money
honestly and did not form the intent to convert it to
his own use until after he so received it, then there is
not the slightest proof, circumstantially or otherwise,
that he formed the intent to and did convert same to his
own use while he was in Adair County.   Defendant was
entitled to the benefit of the presumption of innocence
of the crime charged, and there must be proof of facts
from which the jury could draw the inference that, in
Adair County and after honestly getting possession of
the money, defendant formed the intent to convert it
to his own use.

The proof of the State tends to show that the money
was turned over to defendant while he and Mrs.
Behrbam were in the station at Kirksville and about to
board the train for Kansas City.   They went immedi-
ately to Kansas City and it was there that defendant
first directly and outwardly evidenced his intention to
convert the money to his own use.   The evidence is not
sufficient to show embezzlement in Adair County.

The evidence tending to show that defendant had
formed the intent to obtain the money and.to convert

it to his own use before he received it and that he obtained possession through artifice is of such character that the prosecuting attorney of Adair County may be advised to proceed against defendant in that county for the crime of larceny. For this reason, it is our order that the judgment be reversed and the cause remanded. *White, J.,* concurs; *Walker, J.,* absent.