The State v. Joe Burlison and Sam Jones, Appellants.

Division Two, June 25, 1926.

1. **RAPE: Two Men: Joint Indictment.** Two men may be jointly indicted for ravishing the same female and both be tried together and convicted by separate verdicts, where they acted together, aiding and assisting each other in the perpetration of successive rapes in close or immediate succession. Where the State's evidence tends to show that the two defendants took the thirteen-year-old girl into a bedroom one at a time and successively ravished her; that one of the men was in the kitchen adjoining the bedroom while the other was alone with her in the bedroom; that one of them first ravished her and then held her down on the bed for the purpose of permitting and aiding the other to do likewise, thereby becoming an accessory before the fact in the ravishment by the second, and there is likewise some evidence that the second was acting with the first when he brought the girl into the kitchen, and the indictment jointly charges both with the crime, it is not error to refuse to arrest the judgment entered upon verdicts separately returned against each defendant.

2. **CONTINUANCE: Oral Motion.** An unverified oral motion, disclosing no diligence, does not comply with the statute and is no ground for a continuance.

3. **PRELIMINARY HEARING.** Where defendants are indicted by a grand jury no preliminary examination is necessary.

4. **EVIDENCE: Improper Exclusion.** The improper exclusion of testimony is not error if in some other way or by a different form of question it is gotten to the jury. And particularly is its exclusion not error, where an offer of proof is necessary and none is made.

5. **INSTRUCTION: Abstract Law.** An instruction that "all persons who act together with common intent and purpose in the commission of a crime are equally guilty and equally punishable" is an abstract statement of the law, and should be made applicable to the facts in evidence which give rise to it. · But it is a correct statement of the law as far as it goes, and where there is evidence to which it could have been made applicable, and the other instructions given make it manifest that the jury were not misled by it, it was not prejudicial.

6. ———: **Some Printed: Some Typewritten.** The fact that the formal instructions applicable to every case were printed, and that those applicable to the particular case were typewritten, is not prejudicial. Even if undue emphasis is thereby given to those typewritten, it cannot be seen how defendants are prejudiced thereby.

7. ———: **Credibility of Witness: Child: Sanctity of Oath.** To tell the jury, in the instruction on the credibility of witnesses, to consider the age, moral state of mind and want of a realization of the sanctity of an oath of the thirteen-year-old prosecutrix, is to improperly comment on her testimony. The usual instruction, telling the jury to take into consideration the character of the witnesses, his or her age and manner of testifying, the probability or improbability of his or her statements, "as well as all the facts and circumstances given in evidence," is sufficient in the trial of defendants upon a charge of having ravished said witness.

8. **ARGUMENT TO JURY: Newspaper Exhibits.** It cannot be ruled that the argument to the jury of counsel for the State was improper where no part of the argument or any ruling thereon is preserved in the bill of exceptions. Such assignment cannot be injected into the record by attaching as exhibits to the motion for a new trial newspaper clippings purporting to relate the argument.

9. JURY: Passion and Prejudice: Shown by Punishment Imposed. There being substantial evidence corroborating the clear and convincing testimony of the prosecutrix, and the testimony of the defendants and their witness being of doubtful credence, a verdict assessing the punishment of defendants at imprisonment for a term of twenty years for forcible ravishment of a poor and ignorant girl thirteen years of age cannot be held to be the result of passion or prejudice on the part of the jury, there being no showing that they were otherwise prejudiced or biased.

Corpus Juris-Cyc. References: **Criminal Law**, 16 C. J., Section 562, p. 315, n. 88; Section 874, p. 482, n. 99; Section 912, p. 497, n. 24; Section 1564, p. 760, n. 12; Section 2293, p. 932, n. 14; Section 2337, p. 955, n. 61; Section 2370, p. 973, n. 84 New; Section 2440, p. 1015, n. 80; Section 2469, p. 1033, n. 12; Section 2489, p. 1047, n. 60; Section 2495, p. 1053, n. 93; 17 C. J., Section 3462, p. 170, n. 12; Section 3464, p. 172, n. 44; Section 3470, p. 179, n. 3; Section 3593, p. 255, n. 55; Section 3594, p. 267, n. 92; Section 3674, p. 331 n. 39; Section 3681, p. 335, n. 13; Section 3697, p. 344, n. 33. **Indictment and Information**, 31 C. J., Section 316, p. 756, n. 43; Section 317, p. 756; n. 56. **Rape**, 33 Cyc., p. 1437, n. 67; p. 1449, n. 76; p. 1486, n. 12.

Appeal from Circuit Court of City of St. Louis.—Hon. Wilson A. Taylor, Judge.

AFFIRMED.

*Campbell Allison* for appellants.

*North T. Gentry*, Attorney-General, and *James Donald Purteet*, Special Assistant Attorney-General, for respondent.

(1) The indictment follows the statute and sufficiently informed the defendants of the charge they had to meet. Sec. 3247, R. S. 1919, Laws 1921, p. 284a; State v. George, 214 Mo. 216; State v. Harris, 150 Mo. 61; State v. Hutchens, 271 S. W. 525; State v. Lorton, 271 S. W. 384. (2) The verdicts were in approved form, finding each defendant guilty as charged and separately assessing the punishment. This is sufficient. Secs. 4046, 4047, R. S. 1919. (3) The record discloses that the objection to the indictment was made for the first time in the alleged motion in arrest. This is insufficient. (4) The trial court properly refused to admit testimony of witness Reese and others as to prior specific acts and conduct of prosecutrix to show her reputation for truth and veracity. The witnesses were permitted to testify after qualification as to her reputation for truth. Appellant's counsel sought to have them testify to her acts and conduct prior to the commission of the alleged crime. (5) The trial court properly overruled appellant's application for a continuance. Mere record entry of the application is insufficient for the purpose of gaining a review of the point. State v. Henson, 290 Mo. 238; State v. Belknap, 220 S. W. 44. (6) Appellant's demurrer to State's evidence was properly overruled, as there was ample substantial testimony to justify the trial judge in sending the case to the jury. The demurrer was waived by introduction of testimony in

support of their defense.    State v. Lackey, 230 Mo. 707; State v. Parr, 296 Mo. 406.

BLAIR, J.—Appellants and one Thomas Darmody were jointly indicted for and appellants were convicted of the crime of rape. Darmody escaped.   The jury assessed their punishment at imprisonment in the penitentiary for terms of twenty years each and they have appealed to this court from the judgment entered on such verdict.

The alleged rape was perpetrated upon one Ruby Gray, a female child slightly under thirteen years of age at the time.   It occurred in the city of St. Louis on May 7, 1924.   We will endeavor to state the facts without going into revolting details.

From photographs accompanying the transcript, it is evident that 816 South Eight Street in St. Louis, where the alleged assault was committed, cannot be regarded as a particularly desirable residence section of the city.   Nor would the principal actors and witnesses likely feel at home among the "best families" of the city.

Appellant Burlison admitted that he had been charged with highway robbery, pleaded guilty to a lesser offense, and was sentenced to and served a term in the city workhouse.   Appellant Jones confessed to having served three different terms in the penitentiary.   Ruth Short, one of the main witnesses for the State and sixteen years of age, was shown to be and admitted being a young woman of easy virtue.   Mary Anderson, in whose home of two rented rooms the alleged assault occurred, was not shown to have been personally immoral, but was evidently at home among her immoral associates and permitted visitors in her home to conduct themselves improperly without protest.   Ruby Gray, the prosecutrix, does not appear to have been accustomed to refined surroundings.   She is introduced as a truant from school loitering at midday and alone about the grounds where a carnival was being held.

The State's evidence tends to show that this carnival was being held on some vacant lots at Seventh Street and Chouteau Avenue. The rear of the building, two rooms of which were occupied by Mary Anderson, her husband and her children, faces east and adjoined the carnival grounds on the west.   Ruby Gray was "playing hookie" from school and was loitering about the carnival grounds. She testified that appellants approached her on the carnival grounds and that Burlison asked her if she wanted some wine.   She declined and Burlison took her by the arm and forcibly led her into the house.   Apparently appellant Jones had already gone on into the house.   In the kitchen of the Anderson home were appellant Jones, Tommy Darmody, Ruth Short, Mary Anderson, her little children, and probably a man known as "Blackie."   Mary Anderson's hus-

band was absent, supposedly at work somewhere, and does not appear to have returned prior to the arrest of appellants.

When Burlison got Ruby Gray inside the house she was crying. She sat down on a chair and then Burlison took her forcibly into the bedroom adjoining and ravished her. When he had finished, Jones did the same, Burlison holding her down on the bed until Jones began his assault. In like manner Darmody followed Jones. Ruby was then taken to the door of the hall leading to Eighth Street. She ran away from the building. Mrs. Truly Calix, who occupied the two front rooms on that floor and against whom nothing appeared outside of her bare residence in such squalid surroundings, testified that appellants "chased" Ruby from the house. Ruby ran away and turned back to the carnival grounds and was sitting on a wagon when two police officers approached her and asked her what she was doing there. Upon being asked if she came out of the house at 816 South Eighth Street, she said she did and told the officers what had happened to her there. They took her to Mrs. Anderson's rooms and there found appellants and Darmody, as well as Mrs. Anderson and Ruth Short. Ruby pointed out appellants and Darmody as her assailants and they were put under arrest. One of the officers went out to call a patrol wagon. In his absence Darmody bolted out the back door and escaped. The remaining officer fired a shot at him, but did not succeed in stopping his flight. He had not been apprehended before appellants were put on their trial.

Appellants, Ruby Gray, Mary Anderson and Ruth Short were all taken to the police station. The officers took Ruby to the city physician, who examined her and testified to facts, which were not disputed, showing a fresh rupture of her hymen. There were also fresh male secretions. He said her appearance would be the same whether she was violated by one man or by three men. This physician used the name of Ruth Short as the female examined by him. This was evidently an inadvertence on the part of counsel or the witness, or a mistake of the reporter. It clearly appears that the female examined was the prosecutrix. Ruth Short was admittedly not a virgin. It appears that it was Ruby Gray who was taken by the officers to the physician for such examination. The jury could hardly have been misled by the mistake in the name used, in whatever manner such mistake occurred.

Ruth Short testified that Burlison brought Ruby Gray into the kitchen, that she was crying and looked scared; that he then took her into the bedroom and closed the door, and was followed by Jones and Darmody. She suspected what was going on in the room. She said each man stayed in there with Ruby about an hour. Ruby Gray testified that the act of each man consumed about a half hour. The time fixed by each of the girls was doubtless longer than the

time actually consumed in the sexual assaults, if they occurred. Both of the girls appeared to have been very ignorant. Ruby was in the fourth grade at school.

Mary Anderson and both of the appellants positively denied that Ruby Gray was ever in the Anderson rooms at any time until the officers brought her there at the time she identified appellants and Darmody as her alleged assailants. Appellants further denied making any assault upon her. The testimony of Ruby Gray and of Ruth Short as to the presence of Ruby Gray in the building and as to her being seen with appellants was corroborated by Mrs. Calix, who was entirely disinterested, so far as disclosed by the record. Mary Anderson was asked if and denied that she had suggested to Mrs. Calix that she had better not testify against appellants, because they would "get her." Mrs. Calix was recalled and testified to the occurence of such attempt to intimidate her. It appeared that Mary Anderson at first attempted to say that she did not know Burlison. She admitted at the trial that she was raised with him in Illinois.

There was testimony tending to show that Ruth Short came to the Anderson rooms the night before the alleged assault with a man known as "Blackie" and introduced him as her husband. She was so intoxicated, according to the testimony of Mrs. Anderson, that she was required to keep her all night. Ruth Short denied that Blackie was her husband, but admitted that she had allowed Mrs. Anderson to introduce her to her own (Mrs. Anderson's) mother as Blackie's wife.

According to Ruth Short's testimony, at least Burlison, Jones and Blackie stayed in Mrs. Anderson's kitchen all of the night before the alleged assault on Ruby Gray. She said she slept in the bedroom with Mrs. Anderson, her husband and the children, and slept in the same bed with Anderson and his wife. She testified that intoxicating liquor was consumed by the party during the night and on the morning of the assault.

Burlison and Jones testified that they had an engagement to meet Mrs. Anderson's husband at 1:30 P. M. on May 7th, to discuss details about their going into the huckster business. Anderson was not there and they waited for him to come home from work. Ruby Gray fixed the time when she was taken into the house by Burlison at about noon.

It appeared from the evidence offered by appellants. that three or four men from the carnival came into the Anderson house about 2:30 in the afternoon of the alleged assault, while Burlison and Jones were there, and attempted to take Ruth Short away with them and that Burlison knocked one of the men down. Word of this disturbance reached the police station and they visited the Anderson rooms around 2:30 P. M. Darmody was not in the kitchen at the time. If Ruby Gray and Ruth Short told the truth, Darmody may have been in the bedroom with Ruby Gray at that time. When the officers re-

turned with Ruby Gray, after the alleged assault and her escape from the house, Darmody was sitting on Ruth Short's lap and taking improper liberties with her.

The first assignment of error is that the indictment was fatally defective. Appellants moved to arrest the judgment because they were jointly indicted and thereby charged with the impossible crime of the joint commission of rape and because there is no evidence in the record showing or tending to show that appellants, or either of them, conspired together to commit said crime or that either of them aided, abetted or assisted the other in the commission thereof.

The general rule, as laid down in 33 Cyc. 1449, is that ''where two or more commit a rape successively, each aiding and abetting the other, or where one commits a rape and another aids and abets or is accessory, they may be joined in the same indictment.''

In State v. Harris, 150 Mo. 56, Harris was jointly indicted with two other persons for the crime of rape and the indictment was held ·to be good. GANTT, P. J., said: ''It was entirely competent and proper to charge all three of the defendants jointly. It by no means follows because each could not have been guilty of the sexual act at the same moment that two of them could not have been present as testified by the prosecutrix, aiding and abetting defendant by holding her down while defendant outraged her person.''

In State v. Sykes, 191 Mo. 62, the testimony of prosecutrix was that two men acting together assaulted and ravished her. BURGESS, P. J., said: ''The acts of Byers and defendant in assaulting and ravishing the girl constituted but one offense, the result of one common purpose, and the fact that Byers first assaulted her while Sykes looked on, and after he got through defendant did the like, did not make two separate and distinct offenses.''

It may be conceded that it would be improper to charge two men in the same information or indictment with the joint commission of entirely separate and independent acts of rape, though committed in close succession. But where such persons are jointly charged and the proof shows that they acted together, aiding and assisting one another in the perpetration of successive rapes or that the one committed the act and the other did not, but such other stood by and aided and assisted the one in the commission of such act, they may be jointly charged with the commission of such act and both may be convicted under such·charge. [Sec. 3687, R. S. 1919.]

The State's evidence tended to show that the appellants and Thomas Darmody (who escaped) took prosecutrix into the bedroom one at a time and successively ravished her. Two of the men were in the kitchen adjoining the bedroom when one of them was in the bedroom alone with prosecutrix. As mature men of ordinary intelligence and experience they must have known what was going on in the bedroom

when one of them was in there alone with prosecutrix. Whatever may be said about the base and cowardly conduct of those on the outside, in permitting the ravishment of prosecutrix by one of their number without interference on their part, their mere failure or refusal to interfere, assuming that those in the kitchen at the time did not aid and assist in such ravishment, did not make such persons guilty of the particular act of ravishment accomplished by another. But the testimony of prosecutrix was that appellant Burlison first ravished her and then held her down on the bed for the purpose of permitting and aiding appellant Jones to do likewise. Such evidence tended to show that Burlison was an accessory before the fact in the alleged ravishment of the prosecutrix by appellant Jones. There was, therefore, substantial evidence, not only of the ravishment by appellant Jones, but also that appellant Burlison aided and assisted him in such ravishment. Although the evidence is not very clear, the testimony of Ruby Gray tended, to some extent, to show that Jones was acting with Burlison when he brought the girl into the kitchen. In view of all this testimony, the trial court did not err in refusing to arrest the judgment upon the verdicts separately returned against each of the appellants. Counsel for appellants has cited State v. Mitchell, 219 S. W. (Mo. App.) 977; State v. Hendricks, 193 Mo. App. 660; State v. Daubert, 42 Mo. 239; State v. Lehman, 182 Mo. 424, 1. c. 452, and State v. Christian, 253 Mo. 1. c. 395, in supposed support of the foregoing assignment of error.

The Mitchell and Hendricks cases were decisions by our Courts of Appeals, holding that two persons could not be jointly charged with and convicted of the practice of medicine and surgery without a license. Failure to procure a state license is a personal default and cannot be a joint default. Such failure constitutes the gravamen of the offense charged, because the act of practicing medicine is not in itself any violation of law, except under the circumstances of default in procuring a license to that end. It is apparent that such cases are not in point here.

The Daubert case was a prosecution for larceny by means of shoplifting. Defendant's companion was searched and stolen goods recovered from her person. Defendant was then searched and nothing of that character was found. There was no evidence of any conspiracy to commit larceny. The mere fact that defendant's companion was one who turned out to be a thief did not tend to prove a conspiracy or a common purpose to steal.

The Lehman case was a bribery case, wherein a number of persons were jointly indicted. It was thereby properly held that it was necessary to prove a common understanding to vote for a certain bill, because of improper inducement, before a conviction under such indictment could be sustained.

In the Christian case defendant and another were jointly charged with larceny in one count of the information, and in the second count defendant alone was charged with being an accessory after the fact in aiding the other defendant to escape. Defendant was convicted under the second count, and it was held that the two separate and distinct offenses were improperly joined in the same information.

There is nothing in any of the cases cited by appellants which casts the slightest doubt upon the propriety of a conviction of two persons jointly charged with rape, even though the evidence shows separate acts of rape in succession, where the proof also tends to show that an act of rape was committed by one of them and that the other aided and assisted in the accomplishment of such rape. The assignment must be overruled.

Another assignment of error is that the trial court improperly overruled appellants' motion for continuance. The transcript contains no formal motion and merely discloses that counsel verbally renewed a motion for continuance on the ground that defendants had not had time to investigate fully the facts in the case and because the case was set for trial during ordinary vacation time and no preliminary examination had been accorded to appellants. Such oral motion in no manner complied with ordinary requirements of our practice act in respect to continuances, was not verified, showed no diligence and does not prove itself. The facts are that the indictment was returned in May and the trial occurred in August. This does not indicate undue haste in bringing appellants to trial. As the appellants were indicted by a grand jury, no preliminary examination was necessary, even if that point had been properly and timely raised.

Error is assigned to the rulings of the trial court in the admission and exclusion of testimony. The record contains a great many exceptions to such rulings. Appellants have filed a brief and argument in this court, in which very few instances of that character are pointed out. We have carefully read the record and considered all of such rulings. We find no reversible error in the admission of any testimony offered by the State over the objection of appellants. We find several instances where testimony offered by appellants was excluded, and possibly excluded improperly, but in every instance, so far as our examination has disclosed, the desired testimony was gotten before the jury in some other way or by a different form of question. Hence, appellants were not prejudiced by such ruling. In not a single instance did appellants make an offer of proof and in most of the instances such offer was necessary because the question asked did not disclose the nature of the answers expected. Such assignments of error are therefore overruled.

Some of the instructions are assailed. The only one specifically attacked is number 2, which was that "all persons who act together

with common intent and purpose in the commission of a crime are equally guilty and equally punishable under the law.'' This was an abstract statement of the law and should have been made applicable to the facts which gave rise to it. However, it was a correct statement of the law in the light of the evidence introduced. It does not appear how appellants could have been prejudiced thereby. It immediately followed the main instruction, which correctly told the jury that, if appellants unlawfully and feloniously had carnal knowledge of Ruby Gray a female child under sixteen years of age, the jury should find them guilty as charged. Instruction 2, by its very position, could only have been understood by the jurors as telling them that if they believed appellants were acting together with a common purpose in the commission of any of the acts of ravishment upon prosecutrix, those so acting together were alike guilty.

It is intimated by appellants, but not shown by the record, that some of the instructions were printed and some of them typewritten and that thus undue emphasis was given to the typewritten instructions. Even if such was the fact, we are unable to understand how appellants could have been prejudiced thereby. There are certain formal instructions which take the same form in every case wherein it is proper or necessary to give them. No good reason appears why instructions of that character may not very properly be printed or hectographed to save time in their preparation and to reduce the possibility of ommitting important features in them in the hurry attending the preparation of such instructions separately for each trial.

Complaint is made because the trial court failed, in the instruction on credibility of witnesses, to tell the jury to consider the age, moral state of mind and want of realization of the sanctity of an oath of the prosecuting witness. Such an instruction would have been an improper comment upon the testimony of the prosecutrix. In the instruction upon credibility of witnesses, the jury were told to take into consideration the character of the witness, his or her manner on the stand, the probability or improbability of his or her statements, ''as well as all the facts and circumstances given in evidence.'' This, we think, was sufficient.

Complaint is made of improper argument to the jury on the part of counsel for the State. This assignment is not before us for the reason that not a single word of the argument nor any ruling in respect thereto has been preserved in the bill of exceptions. Appellants' attempt to get such alleged assignment into the record, by attaching as exhibits to their motion for a new trial certain newspaper clippings purporting to relate the nature of the argument of counsel during the trial, is unique to say the least. It needs no argu-

ment to demonstrate that the trial court cannot in any such manner be convicted of error in permitting improper argument.

Finally it is contended that the verdict is the result of passion and prejudice on the part of the jury. There is nothing in the record to support such contention, unless it be the assessment of terms of twenty years' imprisonment against both appellants. Having given credence to the substantial evidence of the guilt of appellants of the dastardly crime charged against them, the jury acted with reasonable moderation in fixing the punishment.

Much of the argument made in this court is of a character proper only before a jury. All we are concerned about here is whether there is substantial evidence in the record to support the verdict. That prosecutrix was the victim of ravishment, suffered two or three hours before her examination by a physican, is abundantly, if not conclusively, shown. Such fact is not disputed by a single witness. Prosecutrix was evidently a poor, ignorant girl of twelve. Her attainment of the fourth grade in school was at least two years below normal, unless her education had been interfered with for reasons not appearing in the record. But, outside of one or two instances where prosecutrix apparently became confused momentarily by the vigorous cross-examination to which she was subjected, her story was as coherent, clear and convincing as could reasonably be expected from a child reared in the environment of which she was a product.

She was fully corroborated by Ruth Short. The latter was confessedly immoral. But her story was unshaken and was reasonable, except possibly as to the time consumed in the several assaults. Mrs. Calix, a witness no effort was made to impeach, corroborated prosecutrix and Ruth Short as to the fact that prosecutrix was in the Anderson house before she came with the officers. This fact was stoutly denied by Mrs. Anderson and by both appellants.

The jury was entirely within its province in refusing to believe the testimony of appellants and Mrs. Anderson. Her record of association with immoral persons, suggesting her participation in immoral practices, was sufficient to preclude credence being given to her testimony. The previous convictions of both appellants for crimes involving moral turpitude left them in an unfortunate position before the jury. It is not strange that no credence was given to their denials of guilt.

The case was well tried by the court before a jury not shown to have been biased or prejudiced against appellants.

We find no reversible error in the record. The judgment is affirmed. All concur.