245 S.W.2d 876 (1952)
STATE
v.
ABBOTT et al.
No. 42639.
Supreme Court of Missouri, Division No. 1.
February 11, 1952.
*877 J. Grant Frye, Cape Girardeau, for appellants.
J. E. Taylor, Atty. Gen., Lawrence L. Bradley, Asst. Atty. Gen., for respondent.
CONKLING, Presiding Judge.
Thurman Abbott and Clarence Maddox, defendants-appellants, were jointly tried upon a charge of robbery in the first degree, for taking $65.00 from Rusby Seabaugh. They were found guilty by a jury and the punishment of each was assessed at ten years imprisonment in the state penitentiary. From that judgment they have appealed. We have concluded that the defendants had a fair trial and that the judgment appealed from must be affirmed.
Upon this appeal defendants concede that the information, verdict and sentence are in proper form and that the evidence was sufficient to warrant a submission of the cause to the jury. But defendants here contend the court erred in denying their oral request for a continuance; in permitting certain cross-examination of defendant Maddox; and in the giving of certain instructions.
From the record before us, the jury could have found these facts: On February 6, 1950, at about 8:55 P.M., Mr. and Mrs. Tony Seabaugh, Rusby Seabaugh, Paul Masters and Perry Statler were all in the store operated by Tony Seabaugh, near Sedgewickville in Bollinger County, Missouri. At the time above stated, these defendants came into that store. One of them walked to the counter and asked for a package of cigarettes and laid down a quarter in payment. Tony Seabaugh waited upon him. When Seabaugh returned with the change, the person who ordered the cigarettes drew a gun, and said, "It's a stick up. Get them up boys; this is a stick up." The other defendant also drew a gun.
At the point of the two 45 calibre automatic guns held by defendants the latter two made Mrs. Tony Seabaugh give to them the money in the cash drawer of the store, $35.00 or $40.00; from Rusby Seabaugh they took $65.00; and from Perry *878 Statler they took $300.00. Defendants then made the four men lie on the floor of the store, and after threatening them, if they gave an alarm too soon, fled in an automobile.
On April 3, 1950, a member of the State Highway Patrol brought the defendants to be viewed by Mr. and Mrs. Tony Seabaugh, and the latter two also identified them the following day in jail at Jackson, Missouri. Defendants were also then and there identified by Statler, Masters and Rusby Seabaugh as the persons who committed the robbery. At the trial defendants were also identified by the five above named as the persons who committed the robbery charged. Defendant Abbott, while in custody, admitted to two State Highway Patrolmen that he and Clarence Maddox committed the armed robbery, that a third man, Paul Christian, remained in the car, and that the three divided the money between them.
The defense was an alibi. Defendant Maddox testified that he was in Pontiac, Michigan, on the day of the robbery, and that he also saw defendant Abbott in Pontiac on that date. Defendants also called one Granville Abbott, a relative of Thurman Abbott, as a witness at the trial. He testified that before the trial he talked to Tony Seabaugh, Rusby Seabaugh and Paul Masters about the case. Defendants did not call any other witnesses.
It appears that the contention of the defendants that the court erred in denying their oral application for continuance is based upon these facts: Defendants' preliminary hearing was held October 13, 1950; the information was filed October 27, 1950; on December 6, 1950, the court appointed counsel for defendants and on that date the cause was set for trial for January 15, 1951; on January 3, 1951, the counsel theretofore appointed were permitted to withdraw and the court then appointed other counsel (who were then and there present in court) for defendants. When the cause was called for trial on January 15, 1951, defendants' counsel orally moved for continuance which was denied. Counsel stated they had "not had adequate time to prepare a proper defense, that we have not been furnished a transcript of the preliminary hearing" and had not been able to secure the attendance of out of the state witnesses.
It is only in homicide cases that the Magistrate is required to make a transcript of the testimony of the witnesses. RSMo 1949, Sec. 544.370, V.A.M.S. And it does not appear that defendant made any attempt to exercise their right to take the depositions of any claimed witnesses under the provisions of Sections 545.380 to 545.410. When a defendant desires the continuance of a criminal case "on account of the absence of evidence" our statute requires that he comply in writing with the clear provisions of Section 545.720. That was not done in this case and the trial court, under the instant circumstances, did not err in refusing to continue the cause. State v. Burlison, 315 Mo. 232, 285 S.W. 712, 716.
Upon the direct examination of the defendant Maddox he gave testimony tending to establish an alibi for defendants. He testified that on February 6, 1950, he was in Pontiac, Michigan, looking for work and that he saw defendant Thurman Abbott in Pontiac on that date; that he had often been in Pontiac and had worked there before February 6, 1950; that his sister lived in Pontiac; that he had there seen certain of his friends and paid a certain bill in Pontiac on February 6, 1950; that he had gone to Pontiac on February 3, and returned from Pontiac to Dexter, Missouri, on February 8, 1950, in an automobile with a man whose name he did not know, but whom he met in a beer garden in Pontiac and whose home was in Poplar Bluff, Missouri. On cross-examination defendant was asked where he was on January 6, 7 and 8 of 1950. It is contended those questions were outside the scope of Maddox' direct examination and violative of Section 546.260.
The questions complained of clearly were asked to test the accuracy of his testimony and memory on the corresponding facts of his direct examination. Clearly they were not asked to prove the truth of anything. The cross-examiner had to be bound by whatever answer was made. They were merely testing questions, to each of which Maddox answered "I don't know." His *879 answers therefore did not prejudice defendant in any event. State v. Davit, 343 Mo. 1151, 125 S.W.2d 47, 53; State v. Whipkey, 361 Mo. 1008, 238 S.W.2d 374, 378.
Defendants also contend that the cross-examination of Maddox transgressed the limits of his direct examination when Maddox was asked if he had relatives in Pontiac and answered that he had one brother and three sisters in that city. No objection was made to that testimony. Defendants did, however, object to Maddox' testimony as to certain nieces living in Pontiac. None of this testimony was material nor was it in any wise prejudicial to any substantial right of defendant. State v. Pierson, 331 Mo. 636, 56 S.W.2d 120. It cannot under any circumstances be held reversible.
It is complained that instruction 4, on reasonable doubt, was grammatically unintelligible and was confusing to the jury. The first two sentences of the instruction are in the form so many times approved by this court that it is not contended those portions of the instruction are not correct. However, the word "it" (italicized infra) appears to have been inadvertently omitted from the following quoted last sentence of the instruction: "But, to authorize an acquittal on the ground of reasonable doubt it should be a substantial doubt arising out of the evidence in the cause, and not a mere possibility that the defendants are innocent."
The omission of the word "it" between the words "doubt" and "should" was a mere clerical error of the writer of the instruction which clearly went unnoticed by the court and by counsel. When considered in connection with the two previous sentences of the instruction wherein the jury was correctly instructed that (1) the law presumes defendants to be innocent, (2) that such presumption of innocence continues unless it has been overcome by proof which establishes their guilt to the jury's satisfaction and beyond a reasonable doubt, (3) the burden of proving the guilt of defendants rests upon the state, and (4) "convinced beyond a reasonable doubt" means "convinced to a moral certainty," we think the jury could not possible have been misled by the omission of the word "it", nor could the defendants have been thereby prejudiced. State v. Thomas, Mo.Sup., 82 S. W.2d 885, 889; State v. Murrell, Mo.Sup., 169 S.W.2d 409, 412; State v. Graves, 352 Mo. 1102, 182 S.W.2d 46, 54.
Defendants next complain that instruction 4, on alibi, "so hedges about the issues of alibi by injecting the reasonable doubt element and so handles that issue as to destroy the effect of their evidence on alibi." It is further contended this instruction is a comment on the evidence, disparages the alibi defense and infringes on the basic rule of reasonable doubt. No reasons are pointed out for the above contentions, but defendants cite State v. Crowell, 149 Mo. 391, 50 S.W. 893, State v. Smith, 358 Mo. 1, 212 S.W.2d 787, and State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701.
The first paragraph of instruction 4 which fairly and properly explains to the jury the alibi defense cannot be questioned. It has been many times approved. See State v. Mardino, Mo.Sup., 268 S.W. 48, 51; State v. Prunty, 276 Mo. 359, 208 S.W. 91, 95. The second paragraph of instruction 4 is as follows: "And in this connection, you are instructed that if you have a reasonable doubt of the presence of the defendants, or either of them, at the time and place where said crime was committed, if you believe it was, you will acquit him; but you are instructed that a reasonable doubt by you of the defendants, or either of them, having been present at the time and place where said crime was committed, to authorize you to acquit them, or either of them, on the ground of your having such reasonable doubt, should be a substantial doubt by you of the defendants, or either of them, having been present where such crime was committed and not a mere possibility that they, or either of them, may have been at another and different place than that at which said crime was committed at the time when it was committed." It is contended that portion of the above quoted paragraph of instruction 4 which follows the semicolon after the word "him", hedges about the alibi issue by improperly injecting reasonable doubt into an alibi instruction and *880 thereby destroys the evidence as to alibi. We think the above contentions of defendants are without merit.
The closing sentence of the instruction unequivocally tells the jury that if they have a reasonable doubt of the presence of defendants at the time and place where the crime was committed, if it was, that defendants must be acquitted, but, that such reasonable doubt "should be a substantial doubt by you of the defendants, or either of them, having been present where such crime was committed and not a mere possibility that they, or either of them may have been at another and different place than at which the crime was committed at the time it was committed."
Instructions 3 and 4 are correct in form, and reasonable doubt, as defined in those instructions, has been many times approved. "Substantial doubt" means a doubt fairly arising out of the evidence in the cause. State v. Smith, 332 Mo. 44, 56 S.W.2d 39. And we think it was proper to instruct the jury in the alibi instruction, not only, that if the jury have a reasonable doubt of the presence of defendants, or either of them, at the time and place where the crime was committed that the jury should acquit, but also, that such doubt should be a "substantial doubt" and not a mere possibility that defendants may have been at another place. A reasonable doubt which will acquit a defendant when his defense is an alibi is the doubt of guilt which arises from a consideration of and comes out of the evidence in the cause, State v. Willard, 346 Mo. 773, 142 S.W.2d 1046, People v. Hornaday, 400 Ill. 361, 81 N.E.2d 168, 170(7). The doubt which authorizes acquittal must be substantial and it may not be fanciful, whimsical or capricious. See cases collected Vol. 36, Words and Phrases, 309 et seq. A reasonable doubt is a substantial doubt and not a mere possibility of innocence. State v. Sillbaugh, 250 Mo. 308, 157 S.W. 352, 354; State v. Marshall, 354 Mo. 312, 189 S.W.2d 301. This instruction 4 placed no burden on defendants to prove their alibi, as did instruction 9 in State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701, but affirmatively and unequivocally told the jury that it was their duty to acquit defendants if they had a reasonable doubt of the presence of defendants at the time and place of the crime. The very nature of this offense required the state to prove the presence of defendants at the scene of the crime in order to prove their guilt. Their only defense was that they were in Pontiac, Michigan, on February 6, 1950. As far as this record reveals defendants were either at one place or the other. The reasonable doubt which would have authorized their acquittal could have arisen as to but one issue, i. e., whether they were in Tony Seabaugh's store or in Pontiac, Michigan, at 8:55 P.M. on February 6, 1950. Under these circumstances we think it was proper to give instruction 4 in the form given. We approved this instruction in State v. Barton, 214 Mo. 316, 322, 113 S.W. 1111, 1113. State v. Crowell, supra, and State v. Smith, supra, cited by defendants are not at all in point; and instruction 9, considered and ruled in State v. Hubbard, supra, contained clearly apparent defects and was quite different from the instant instruction 4.
The closing part of the state's instruction 2 on the credibility of witnesses is attacked by defendants. That instruction concludes with the following: "* * * if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness' testimony." The defendants contend that "the jury is not at liberty to reject any testimony that it believes to be true even though it comes from a witness who has knowingly testified falsely on some other material fact." The only Missouri case cited by defendant which even approaches a discussion of an instruction of a claimed similar character is State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492, 494. But in the Whipkey case the instruction there ruled to be erroneous instructed the jury that " * * * you should reject all or any portion of such witness' testimony." (Emphasis ours.) That case is not authoritative here.
Much has been written by the courts upon instructions of this character. State v. Thomas, 353 Mo. 345, 182 S.W.2d 534; State v. Willard, supra; State v. Bradley, Mo.Sup., 234 S.W.2d 556; State v.
*881 Hamilton, 304 Mo. 19, 263 S.W. 127; State v. Barnes, Mo.Sup., 204 S.W. 264. See also, annotations, 90 A.L.R. 74, 81, 4 A.L.R.2d 1077. It is clearly improper to give such an instruction where there is no evidence at all upon which to base it. State v. Barnes, supra, Farmers State Bank v. Miller, Mo.App., 26 S.W.2d 863. But that situation does not here exist for the three Seabaughs, Statler and Masters, all testified that defendants were in Seabaugh's store at the time of and committed the robbery, and defendant Abbott testified that he and Maddox were in Pontiac, Michigan, on the date of the robbery. Thus was the issue directly raised.
Where there is a factual basis in the testimony of the witnesses for the giving of such an instruction, this court has always held that it was discretionary with the trial court to give or to refuse to give an instruction of this character. State v. Hamilton, supra; State v. Brown, Mo.Sup., 270 S.W. 275, 276. But if, in the exercise of a sound judicial discretion in a proper case the instruction is given, it must of course be correct in form.
In State v. Barnes, supra [204 S.W. 266], this court considered the identical instruction attacked in this case. In the Barnes case the appellant urged the same objection as defendants here urge against the instant instruction 2. This court disposed of the contention made in the Barnes case in these words: "The legal maxim, `falsus in uno, falsus in omnibus,' is a crystallization of general experience. It is held, of course, that such an instruction is improper unless there is evidence upon which to base it. The instruction, according to the ordinary understanding, simply tells the jury that if they believe a witness has testified falsely in any material particular, in weighing the testimony of such witness that fact furnishes them a reason for disbelieving anything else the witness may have said. They are not required to reject it, but they may do so; and no jury would be likely to understand that this option would authorize them to reject it if they believed it to be true. The instruction has been given so often and the propriety of giving it is so imbedded in the rules of approved practice that no reason appears sufficiently cogent to require its rejection at this late day." That ruling was approved in State v. Willard, supra. And see also, State v. Foster, 355 Mo. 577, 197 S.W.2d 313. It was not error to give instruction 2.
It appears that the last case of this court wherein an instruction of this character was extensively discussed is State v. Willard, supra [346 Mo. 773, 142 S.W.2d 1052], wherein Judge Ellison considered and reviewed the rulings and the reasoning in a multitude of previous cases. The instruction considered and ruled in the Willard case was not the exact instruction given in this case. But the Missouri rule was there stated in these words: "In the application of the maxim (falsus in uno, falsus in omnibus) the rule established in this state is that if the jury believe a witness has committed perjury in the case on trial by wilfully swearing falsely to a material fact, they may for that reason alone reject the rest of his testimony, but cannot be required to do so." The Willard case opinion went further and suggested: "We * * think a court has gone far enough when it instructs the jury that if they believe a witness has wilfully sworn falsely on a material issue, they should consider that fact in determining the credibility of the rest of his testimony." We are at a loss to understand why, where the instruction is warranted at all and a discretion is exercised to give such an instruction, that last above quoted suggestion is not always followed. See also Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 247. But the instruction here given was not reversible error.
We have examined the information, verdict and judgment. They are in form and are sufficient. The jury had evidence upon which they could and did find the defendants guilty. The verdict was responsive. Defendants were granted allocution. The judgment of the circuit court must be and is hereby affirmed.
All concur.