259 S.W.2d 839 (1953)
DUFFY
v.
ROHAN.
No. 43115.
Supreme Court of Missouri, Division No. 1.
July 13, 1953.
*840 Donald S. Siegel, St. Louis, for appellant.
Moser, Marsalek, Carpenter, Cleary & Carter, F. X. Cleary and O. P. Owen, St. Louis, for respondent.
LOZIER, Commissioner.
Plaintiff sued for $15,000 damages for personal injuries sustained in a collision between his and defendant's automobiles on May 30, 1950. Defendant counterclaimed for $7,500. Verdict was for defendant on plaintiff's claim and for plaintiff on defendant's counterclaim. Plaintiff appealed from the ensuing judgment.
The collision occurred in the intersection of Enright and Clarendon Avenues in the City of St. Louis. Clarendon runs northsouth and Enright east-west. Enright is "not very wide, approximately 40 feet, and Clarendon is possibly a little bit wider." There are three three-story residences on the south side of Enright west of Clarendon. Clarendon is "two-way" and Enright is "one-way" (for eastbound traffic only). There was a stationary "Stop" sign on Clarendon south of the Enright south curb line. It was stipulated that under city ordinances Enright was a "major street" and that the operator of a motor vehicle was required to stop before entering or crossing a "major street."
Defendant said that she was driving east on Enright at 22-25 m. p. h. When she was almost to the east (projected) Clarendon curb line, she saw plaintiff's car coming north on Clarendon; it was about two car lengths south of the intersection; she would not "commit herself" that his speed was 30 or 40 m. p. h., but it was faster than her's; she assumed that he would stop at the stop sign but he did not; the collision occurred in the intersection's northeast quadrant when the front of her car struck the right side of plaintiff's car. Plaintiff said that: When he approached the intersection, he was following another car which stopped at the stop sign; he did not stop; when he came up to Enright and saw defendant's car 125-150 feet away, "I was satisfied that I could make it without a struggle."
Plaintiff testified that: Prior to the collision, his weekly earnings as an over-theroad truck driver for Consolidated Forwarding Co. were $115 or $120; about two months after the collision he returned to work with Consolidated; he afterward worked for other moving or storage concerns; at trial time, he had been working two or three days a week for Viking Freight Co. at $10 per day as a part-time freight checker. However, Consolidated's records showed that: Between March 10, 1949 (when plaintiff was first employed), and January 1, 1950, his weekly earnings ranged from $48 (base pay) to $63.90 (base pay plus overtime); between January 1, 1950, and May 30, 1950 (the collision date), his weekly earnings averaged $50.85; when he returned to work the last week in August, 1950, he was re-employed as a truck helper; he was paid $57.60 the first week and $73.75 each of the next ten weeks; he left August 4, 1951; at no time had he been paid "anything near $115 or $120 a week." The accounting supervisor of Viking Freight Co. testified that he had checked the payrolls for 1951 and had found "no record of a James Duffy being on our payroll."
Plaintiff went to the jury on defendant's excessive speed and failure to swerve. Defendant submitted plaintiff's failure to stop before entering the intersection.
Plaintiff's verdict-directing (upon plaintiff's claim) Instruction No. 1, and defendant's verdict-directing Instructions Nos. 4 and 8 (upon plaintiff's claim and defendant's counterclaim, respectively) required of plaintiff the exercise of the highest degree of care. Defendant's Instruction No. 3 (predicating a defendant's verdict on plaintiff's *841 cause of action) hypothesized, inter alia, that "defendant, by the exercise of the highest degree of care, could not have prevented the accident by swerving her automobile after she saw, or by the exercise of the highest degree of care could have seen, plaintiff's automobile approaching and entering the intersection." (We have inserted the italicized phrase.) Plaintiff contends that, because of the omission of that phrase, the instruction: Not only required of defendant a "somewhat lesser degree of care" than that required of plaintiff by other instructions, but "failed to prescribe any standard of care whatever for defendant as to the swerving of her automobile" and that "the omission of such requirement of care would indicate to the jury, and the jury would believe, that defendant was not required to exercise the highest degree of care to prevent the accident by swerving her automobile."
We do not believe that the instruction can reasonably be so construed, or that the jury was in any way misled or that defendant could have been prejudiced. Instructions must be read and construed together. West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308, 313 [10, 11]. Where a verdict-directing instruction is "merely indefinite, ambiguous, or misleading, standing alone, and these defects are corrected by other instructions so that when all are read together the law of the case is sufficiently stated, then the error in the one instruction is not reversible." State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351, 355 [1, 2]. And, where the instructions are read together "and where, taken together, they do contain a complete exposition of the law and cover every phase of the case, a verdict obtained thereon will be sustained, although some of the instructions taken separately may be incomplete and open to criticism." Higgins v. Terminal R. R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380, 387 [18-20].
Plaintiff's Instruction No. 1 (verdict-directing as to plaintiff's claim) hypothesized that "defendant negligently failed to swerve her said automobile to one side." (The propriety of such a submission is not now for decision.) And, as will appear, defendant's Instruction No. 4 (directing a verdict on plaintiff's claim upon the hypothesis of plaintiff's failure to comply with the stop sign) required of plaintiff the exercise of the highest degree of care, defined that degree as that which a very careful and prudent person would exercise under the same or similar circumstances and told the jury that plaintiff's failure, if any, to exercise such care was negligence. The jury is presumed to have read all of the instructions together, and to have construed the submission in Instruction No. 3 as hypothesizing that defendant could not, non-negligently or due to failure to exercise the highest degree of care, have prevented the collision by swerving. The assignment is overruled.
Instruction No. 4 (directing a defendant's verdict on plaintiff's claim) required the jury to find: That plaintiff "drove and operated his automobile into the intersection in violation of the boulevard stop sign," that same was negligence and that such negligence contributed to cause his injury. Plaintiff contends that the instruction is erroneous because it did not require a finding that his violation of the sign directly contributed to his injury. (It is not important that, under plaintiff's Instruction No. 1, the jury could, as plaintiff contends, "have found that plaintiff's failure to comply with the sign was not a direct cause." The question is: Did defendant's Instruction No. 4 submit that plaintiff's failure to stop was a direct cause?)
Plaintiff says that Instruction No. 4 was erroneous under our holding in Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223, 228[10]. However, the instruction was proper under the exception recognized and discussed in the Stumpf case and applied in Henson v. Jasinsky, Mo.Sup., 251 S.W.2d 601. "The exception, therefore, embraces those cases where the hypothesized negligent acts of plaintiff permit no reasonable inference but the inference that the negligence was a direct, producing or efficient cause of the casualty." 189 S.W.2d 228[9]. We rule that, in the instant circumstances, the only reasonable inference drawable from the act or omission hypothesized *842 in Instruction No. 4 (plaintiff's violation of the stop sign) is that plaintiff's failure to stop before entering the intersection "directly" contributed to cause his injury. Stumpf v. Panhandle Eastern Pipeline Co., supra.
Plaintiff says that the hypothesis that plaintiff "drove and operated his automobile into the intersection inviolation of the stop sign" was "a general, not a specific charge of negligence, * * * does not state in what way plaintiff violated the stop sign, * * * does not state that plaintiff failed to stop at the stop sign * * * and permits the jury to speculate and supply their own theory as to the manner in which plaintiff violated the stop sign." We do not see how the instruction permitted the jury to speculate as to how plaintiff could have "violated" the stop sign except by not stopping. Furthermore, in defendant's Instruction No. 8, plaintiff's "violation" was clearly submitted thus: That he "did not stop his automobile before entering Enright Boulevard, * * * but that he drove his automobile into said intersection without stopping at the boulevard stop sign."
The first paragraph of defendant's Instruction No. 5 was: "The court instructs the jury that the burden is on the plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so your verdict must be for the defendant." (Our italics.) Plaintiff says that this "would be understood as requiring plaintiff to disprove his own contributory negligence * * *." We do not believe that the jury could reasonably have so construed the instruction. Bleil v. Kansas City, Mo.Sup., 70 S.W.2d 913, 914[2], wherein we said: `This is the common sense of the matter. * * * It would seem hardly possible that, after having listened to the contentions of the parties and the evidence supporting each, when the court told the jury that `the burden of proof is upon the plaintiff to prove his case by a preponderance of the evidence,' the jury would understand that this meant that plaintiff must disprove the defense in the same way." And in Cornwell v. Highway Motor Freight Line, Inc., 348 Mo. 19, 152 S.W.2d 10, 14[2], we said: "We fully agree with the reasoning in the Bleil case, supra. Further discussion is unnecessary. If plaintiff desired an instruction placing the burden of proof on defendants to establish contributory negligence, he should have requested such an instruction. Since he did not do so, he may not complain."
We do not agree that cases wherein similar instructions were ruled not reversibly erroneous "are distinguishable because in the case at bar defendant submitted to the jury a counterclaim and the words `his case' are inappropriate without further explanation, lest they be construed by the jury as meaning plaintiff's entire case." Disproof of his own contributory negligence is no more a part of a plaintiff's burden of proof of "his case" where the defendant has counterclaimed than where he has not. The burden of proof as to a plaintiff's negligence is on the defendant whether he submits such negligence as a contributory neglience defense to the plaintiff's claim or as primary negligence in the defendant's counterclaim. As the essential issue is the same in both instances, instant plaintiff was entitled to request an instruction placing the burden of proof as to his contributory negligence on defendant. As he did not do so, his assignment must be overruled. Cornwell v. Highway Motor Freight Line, Inc., supra.
Defendant's Instruction No. 9 told the jury that if they believed that any witness had knowingly sworn falsely to "any fact or facts material to the issues," they must disregard such portion of the witness' testimony as they believe to be false and "may disregard all other portions of such witness' testimony." Plaintiff says that "if the jury believed that any witness knowingly swore falsely to any fact they could then disregard all other portions of such witness' testimony." However, the instruction clearly limited the knowingly false swearing to any material fact.
We have summarized the conflicting evidence as to plaintiff's employments and earnings. This testimony, of course, was as to a material issuewhether plaintiff (as he had pleaded, evidenced and submitted) had sustained prior and future losses of *843 earnings and, if so, to what extent. Plaintiff argues that "the importance and materiality of these facts pale by comparison with the facts regarding the liabilities and injuries of the parties." Probably so, but the propriety of a "falsus in uno" instruction does not depend upon the relative importance of the material testimony.
Of "falsus in uno" instructions: "Where there is a factual basis in the testimony of the witnesses for the giving of such an instruction, this court has always held that it was discretionary with the trial court to give or to refuse to give an instruction of this character." State v. Abbott, Mo. Sup., 245 S.W.2d 876, 881[10]. And the jury should only be authorized, not directed, to reject the entire testimony of a witness who, the jury believes, has knowingly sworn falsely as to facts relating to a material issue. State v. Willard, 346 Mo. 773, 142 S.W.2d 1046, 1052[12-14]; State v. Abbott, supra, 245 S.W.2d 881[11].
Plaintiff complains of the use of "disregard" instead of "reject". "Disregard" has been criticized. See State v. Willard, supra, 142 S.W.2d 1052[15]; State v. Bradley, 352 Mo. 780, 179 S.W.2d 98, 101[5]; State v. Graves, 352 Mo. 1102, 182 S.W.2d 46, 55[16]; State v. Thomas, 353 Mo. 345, 182 S.W.2d 534, 540[9]; State v. Marshall, 354 Mo. 312, 189 S.W.2d 301, 305 [11]; Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 247[7-8]. However, as Judge Ellison (author of the Willard, Graves, Thomas and Marshall opinions) has pointed out, no cases have been reversed for that reason. State v. Marshall, supra, 189 S.W. 2d 306[11]. And see Anno. 4 A.L.R.2d 1077, 1090. We rule that instant Instruction No. 9 was not reversibly erroneous. (However, we again remind trial courts and members of the bar that we have often criticized "disregard" and said that "reject" is preferable.)
Plaintiff next says that the testimony of defendant, who was the only eyewitness testifying in her behalf, was "manifestly contrary to the overwhelming evidence and in contravention of the laws of nature or physics," citing Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S.W. 2d 1079, 1082[6]. Defendant testified that she first saw plaintiff's automobile before the front of her car was at the east (projected) Clarendon curb line; that, at that time, she was going 22 to 25 m. p. h. and plaintiff's car was about two car lengths south of the stop sign; that by the time she reached the (projected) curb line, plaintiff's car had "picked up speed"; that she did not know what his speed was; that while she "wouldn't commit herself" as to whether his speed was 30 or 40 m. p. h., he was "probably going a little faster than I was."
Construing defendant's entire testimony in a light most favorable to himself, plaintiff first assumes both that defendant first saw plaintiff's car when she was at, not before she reached, the (projected) curb line and that her speed was 25, not 22 m. p. h. Plaintiff then says that he "would have had to travel at a speed of 38 m. p. h. to reach the point of impact in time for defendant's automobile to have struck him." We agree that the jury reasonably could have drawn such an inference from defendant's testimony. But it does not follow that, because such an inference could properly have been drawn, defendant's testimony was "in contravention of the laws of nature or physics." Plaintiff has not shown, and we have been unable to see, wherein defendant's testimony was contrary to the physical facts or to known physical laws.
Upon cross-examination, one of plaintiff's witnesses stated, in a non-responsive answer, that a man from "some insurance company had come to his office about his son (another plaintiff's witness)where they could get hold of him to get a statement from him." Defendant's counsel moved "for the discharge of this jury * * * because of the prejudicial remark of this witness respecting an insurance man calling upon him after the accident." The trial court then asked plaintiff's counsel, "What do you say about that?"; and plaintiff's counsel said that he "wouldn't want to go up to the Court of Appeals on this case." A recess was taken, after which defendant's counsel withdrew his motion. Whereupon, *844 plaintiff's counsel requested that the jury be discharged and defendant's counsel refused to concur in that request. The trial court permitted defendant's counsel to withdraw his motion and denied the request of plaintiff's counsel. The trial court then carefully and clearly charged the jury that "the question of insurance or no insurance" was not in the case and should not be considered in either "any deliberations you may make or in arriving at a verdict."
Plaintiff says that the trial court's action "created bias and prejudice in the minds of the jury in favor of defendant"; this, because the trial court had, in the presence of the jury, "questioned plaintiff's attorney as to his opinion of the merits of defendant's motion to discharge the jury, and elicited from plaintiff's attorney, in the presence of the jury, said attorney's opinion that the defendant's motion should be granted. * * When prejudice has been thrust into a case, withdrawal does not cure the damage."
Plaintiff cites O'Hara v. Lamb Construction Co., Mo.App., 197 S.W. 163, 165[3], wherein, as here, "The red hot iron of prejudice" was "thrust" by the plaintiff and its withdrawal left a "festering wound" in the defendant's case. Here, however, defendant chose to submit her "wounded" case and to withdraw her motion for the jury's discharge. Certainly, the trial court did not err in sustaining that motion. Even if it was error, plaintiff cannot complain as the party prejudiced by his "hot iron" was his adversary, not plaintiff himself. Judgments are not reversed because of error not prejudicial to the appellant. Section 512.160, RSMo 1949, V.A.M.S.; Carlisle v. Tilghmon, Mo.Sup., 159 S.W.2d 663, 665[8, 9]. It follows that the trial court properly denied plaintiff's unusual request for the jury's discharge.
The judgment is affirmed.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
All concur.