Charles **ROBERTSON**, Movant-Appellant,

v.

**STATE** of Missouri, Respondent.

**STATE** of Missouri, Respondent,

v.

Charles **ROBERTSON**, Appellant.

Nos. 55478, 47352.

Supreme Court of Missouri, Division No. 1.

March 8, 1971.

Cordell Siegel, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

In 1958, after a trial under the then existing Habitual Criminal Act, a jury found Charles Robertson guilty of rape and he was sentenced to life imprisonment. The judgment of conviction was affirmed by this Court in State v. Robertson, 328 S.W. 2d 576. Because Robertson was not represented by counsel on his appeal, the judgment of this Court was vacated and the appeal resubmitted. Robertson had filed a motion in the St. Louis Circuit Court under Supreme Court Rule 27.26, V.A.M.R., to set aside the judgment of conviction on the grounds that identification procedures prior to his trial had violated his constitutional rights. The trial court, after a hearing, found against the movant and denied relief. The movant has appealed from the judgment in that proceeding. The appeals have been consolidated.

At around 2:00 P.M. on June 20, 1958, Mrs. Virginia Diamond was alone in the apartment which she, her husband and 12-year-old daughter, Carlon, occupied at 4125 Westminster, St. Louis.

A man entered the bedroom in which Mrs. Diamond was working. He held a weapon, which appeared to be a pair of scissors partially covered with cloth, against Mrs. Diamond's stomach and said, "You got any money?" Mrs. Diamond gave him $20 from her purse and the man left the room. After about two minutes, Mrs. Diamond opened the bedroom door and saw the man standing just outside the door. He re-entered the bedroom and ordered Mrs. Diamond to remove her clothing. When she protested, he removed her clothing and in the process struck her in the nose, knocking off her glasses and causing her nose to bleed. He raped Mrs. Diamond and left the apartment by a rear door and went down a fire escape. A neighbor Mrs. Taff, had heard the commotion in the Diamond apartment and saw the man as he passed the rear door to her apartment. The man stopped in the yard at the back of the apartment and made a remark to a neighbor boy, Merrell Austin, who was playing there with Mrs. Diamond's daughter.

Mrs. Diamond ran to a neighboring apartment. Police were called to the scene. Mrs. Diamond described her assailant to the police. At around 7:30 P.M., Robertson was arrested by St. Louis police at Vandeventer and Olive Streets. He was taken to the Newstead Avenue station and then to police headquarters. At around 8:30 a three-man line-up was conducted at headquarters. Mrs. Diamond and her daughter, Austin and Mrs. Taff identified Robertson. He was then returned to the Newstead station, where he was interrogated by police in the presence of Mrs. Diamond.

Further details of the evidence at the trial may be found in the now superseded opinion referred to above.

Appellant's first point, raised in the 27.26 motion, relates to the suggestiveness of the identification procedure. Acknowledg-

ing that the trial preceded United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, so that the specific requirements of those cases are not. applicable, appellant contends that under the "totality of circumstances" rule, applicable under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, and Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402, the conduct of the identification procedures in the case was so unnecessarily suggestive and conducive to irreparably mistaken identification as to be a denial of due process of law under state and federal constitutional guaranties.

Appellant enumerates the following circumstances in support of his contention: (1) "placing defendant in a lineup wearing similar clothing as that described by the witnesses with two other 'considerably shorter' persons." (2) "having defendant viewed by the witnesses in a one man showup." (3) "having the defendant viewed and pointed out by a witness at the time he was brought to the station after arrest." (4) "showing witnesses a photograph of the defendant prior to the lineup." (5) "having defendant pointed out by the victim at the lineup in plain view of the other witnesses." (6) "interrogating the defendant in the presence of the witnesses after the lineup."

On the 27.26 hearing, the three police officers who arranged the line-up testified. They testified, largely on the basis of general police procedures, that the three men in the line-up were of generally similar characteristics, including height. At the trial one of the officers had testified that the other two men in the line-up were "just a fraction shorter than the defendant." Mrs. Taff, at the trial, testified that the other two were a "couple inches" shorter. The only support for the contention that the others in the line-up were "considerably shorter" is in Mrs. Diamond's

affirmative response to a question on cross-examination: "Considerably shorter?"

In our opinion, the appellant has not demonstrated that he stood out from the other men by the contrast of their heights. In Foster v. California, supra, relied upon by appellant, there was a six-inch difference between the height of the defendant and of the other two men in the line-up. None of the evidence in this case would support a finding that, by reason of his height, defendant stood out from the others in the line-up.

On the one-man showup, the evidence was that this occurred after the three-man line-up at police headquarters and after the defendant had been returned to the Newstead station. The persons who viewed defendant at Newstead at that time had already identified him at the three-man line-up. Sergeant Schaaf of the police department testified that police procedure at the time involved questioning of the accused in the presence of the victim in an effort to obtain a statement.

Inasmuch as the persons who viewed appellant alone at the Newstead station had previously identified him, there is no basis for the assumption that the Newstead station confrontation gave rise to a possibility of irreparable misidentification.

On the claim of identification by a witness when defendant was first brought to the Newstead station after his arrest, the evidence is unclear. At the 27.26 hearing, Officer Latham, who arrested appellant, testified that when he brought defendant to the station, "one of the witnesses was sitting in the chair when I come into the station with the prisoner, and she immediately pointed and said, 'There is the man right there. I recognize him, his shirt and belt.'" The officer could not recall the witness's name, but said that she was the person who saw defendant on the fire escape. That would most likely have been Mrs. Taff. However, on the original trial,

the officer had testified that he was sure that Mrs. Taft did not see defendant before the headquarters line-up and that she did not see him at the Newstead station prior to that time. Mrs. Taff testified at the trial that the first time she saw defendant after she saw him on the fire escape was around 8:30 P.M. at the Newstead station.

■ Without attempting to resolve the conflicting testimony and giving appellant the benefit of the most favorable version of the encounter between Mrs. Taff and defendant at the Newstead station, the most it shows is a chance encounter at which the witness, without suggestion, immediately recognized and pointed out the defendant. Mrs. Taff had testified that she saw defendant as he came down the fire escape. She gave police a description of the man she saw. This description fits the defendant. This evidence supports a finding of adequate basis for identification of defendant, apart from the encounter at the police station, and, therefore, there could be no basis for the conclusion that such encounter gave rise to the possibility of misidentification. Nor do we indicate that, in any event, the chance encounter at the station would have necessarily tainted the subsequent in-court identification by the witness. See State v. Bibbs, 461 S.W. 2d 755, decided by Division Number One of the Supreme Court of Missouri, December 14, 1970.

■ The evidence on the photograph does not show that "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, supra. Answer to the claim here raised is to be found in Mrs. Diamond's testimony that she did not recognize the photograph exhibited to her as that of her attacker. As will be discussed later, the record is not clear as to whether or not the photograph shown Mrs. Diamond was of defendant. At most the evidence would indicate that it

might have been a photograph of defendant taken in 1953. However, since Mrs. Diamond did not accept the photograph as that of her attacker, we fail to see how it could have given rise to any possibility of misidentification. Furthermore, Mrs. Diamond's observation of the defendant during the robbery and rape enabled her to provide the police with a description of her attacker and provided a more than adequate independent basis for her identification. See Grant v. State, Mo., 446 S.W.2d 620.

■ As for the contention that witnesses identified defendant in the line-up in the presence of other witnesses, that fact alone does not show improper identification procedures. State v. Williams, Mo., 448 S.W.2d 865. The only evidence relied upon by appellant is the testimony of Carlon that she saw her mother point out one of the men at the line-up. There is no showing whether this occurred before or after Carlon made her identification. Again, Carlon had ample opportunity to observe defendant when he was in the rear of the apartment. We find no basis for concluding that her identification at the line-up and trial was based upon her mother's prior identification of defendant.

We find no basis to conclude that the finding of the trial court on the issue of the identification procedures was clearly erroneous. Supreme Court Rule 27.26(j), V.A.M.R.

On the direct appeal, the first point of appellant relates to the admission into evidence of State's Exhibit 7. As above mentioned, the record is unclear as to whether or not Exhibit 7 was a photograph of appellant. State's Exhibit 8, a photograph of the same person shown in Exhibit 7, bore the name "Charles *Robinson*." Mrs. Diamond said that Exhibit 7 was the photograph shown her by the police, but she said that it was not of her attacker.

If the photograph was of appellant, its exhibition to the jury would have had a

bearing on Mrs. Diamond's identification testimony, for it would have permitted the jury to compare the photograph with the appearance of appellant and to make use of its observation in evaluating the identification testimony of Mrs. Diamond.

 If, in fact, the photograph was not of the defendant, we fail to see how its admission would have been prejudicial to appellant. Admittedly, the photograph might have been immaterial and irrelevant but that alone would not call for a new trial. The admission of immaterial and irrelevant evidence is reversible error only if the defendant is thereby prejudiced. State v. Moore, Mo., 353 S.W.2d 712, 714–715[6]; State v. Niehoff, Mo., 395 S.W.2d 174, 179–180[3].

 Appellant argues that "there is every indication that State's Exhibit 7 was actually a 'mug shot.'" Upon such assumption, he argues that admission of the photograph was prejudicial error. There is no necessity to delve into the law on admissibility of "mug shots." See State v. Childers, Mo., 313 S.W.2d 728, 731[5]; Annotation: "Admissibility, and Prejudicial Effect of Admission, of 'Mug Shot,' 'Rogue's Gallery' Photograph, or Photograph Taken in Prison, of Defendant in Criminal Trial," 30 A.L.R.3d 908. Here, no objection was made at the trial on this ground. There is no showing that the photograph was, in fact, a "mug shot." Therefore, that question is not presented for review.

Appellant next complains of the refusal of the trial court to permit a police officer to procure a police report in order to refresh his recollection about a possible statement of the prosecuting witness. This matter arose in the questioning of Officer Kreuger. Officer Kreuger testified that he showed "a picture" to Mrs. Diamond. He identified Exhibit 7 as the picture he showed her. On cross-examination, the officer stated that he showed Mrs. Diamond the picture at the Newstead station at around 5:00 P.M. on the day of the crime. He testified that Mrs. Diamond stated that there was a resemblance in the person pictured to the man she saw in her apartment, referring "to the nose and chin as possibly alike." The officer was then asked whether or not she said anything about the eyes and the officer stated that he was unable to recall any such statement. In response to questions, the officer stated that whatever statement Mrs. Diamond made about the picture was embodied in his report which should have been on file at police headquarters. Defense counsel made several inquiries, designed to ascertain whether or not reference to the report might refresh the witness's recollection and then made an offer of proof which might be treated as a request to permit the witness to refresh his recollection by referring to the police report. The trial court denied the request on the grounds that the police report was not admissible in evidence and that defense counsel was seeking to do indirectly what could not be done directly.

 Appellant argues that recently in State v. Cannon, No. 54,252, decided July 13, 1970, this Court upheld the right of defense counsel to the production for examination of police reports without the necessity of showing in advance an inconsistency between the contents of the report and the testimony of a witness at the trial. State v. Cannon is now pending before the court en banc and is not a final decision to be applied in this case.

In any event, however, this is not the situation presented in Cannon. Defense counsel was not seeking to examine the police report. His request was to permit the officer to do so in order to refresh his recollection.

 The general rule is that whether or not a witness is to be permitted to refer to a writing in order to refresh his recollection is a matter for the trial court's discretion, reviewable only for abuse. State v. Bradley, 361 Mo. 267, 234 S.W.2d 556, 560[10, 11]; State v. Merrell, Mo.,

263 S.W. 118, 122–123[10–11]. Although this is not clearly a case of exercise of discretion, the trial court, in any event, should not be convicted of error unless its ruling was prejudicial to the defendant. Mrs. Diamond had testified that the person pictured in Exhibit 7 was not her assailant. She distinguished the photograph for the reason that the face there shown was thinner than that of her attacker. Officer Kreuger testified that Mrs. Diamond noted a resemblance in the nose and chin. Whether or not she had noted a resemblance between the eyes would have tended neither to prove nor disprove her identification of the defendant. The dissimilarity which she had noted caused her to conclude that the person shown in Exhibit 7 was not the offender. The similarities she might have noted were immaterial. The trial court's ruling was not error.

Appellant's final contention relates to the trial court's overruling of objections to the reading by the prosecution of portions of the depositions of Mrs. Diamond and Mrs. Taff.

In the cross-examination of Mrs. Diamond and Mrs. Taff, defense counsel interrogated them exhaustively about their identification of the defendant. In the course of the cross-examination, counsel read from depositions of the witnesses which he had taken. The questions and answers taken from the depositions were directed at showing inconsistencies between the deposition and trial testimony of the witnesses, thereby impeaching the crucial identification testimony of such witnesses. For example, in Mrs. Diamond's cross-examination, she was interrogated about the shirt her assailant was wearing. She described the shirt as having "a work" or "stitching" on it. When asked whether it was a "print," she responded negatively. Counsel then read from the witness's deposition in which she had stated: "There were things in it, kind of like a print in it like down the front." The witness had described a belt worn by her assailant, stating it was brown with lattice work. She

acknowledged, in response to a deposition inquiry, that at that time she had said she did not know what color the belt was. Again, the witness was asked whether or not Mrs. Diamond had been unsure of her identification prior to viewing defendant at the Newstead station. After she responded in the negative, she acknowledged that in her deposition the following appeared: "Question: * * * The second time they showed him up to you in case you weren't sure about the first time? Answer: Yes." The witness testified that she recalled that answer.

In cross-examination of Mrs. Taff, she testified that she had informed the police that the man she saw on the fire escape was carrying a belt with white striping. The witness acknowledged, in response to a question and answer on her deposition that at that time she had described the belt as "a tan belt."

After all of the testimony of the state's witnesses was concluded, the circuit attorney, over the defendant's strenuous objections, read further and in detail from the depositions of Mrs. Diamond and Mrs. Taff. From Mrs. Diamond's deposition, he read the questions and answers relative to what occurred from when she first saw the defendant in her bedroom until he left. The deposition testimony included her description of the assailant and of the clothes he was wearing. The deposition testimony described the robbery and the ensuing rape. The line-up testimony was read, including the witness's identification of defendant at the line-up. Mrs. Taff's testimony about her opportunity to observe the man on the fire escape, her description of the man and his clothing, the fact that she gave such description to the police and her line-up identification were read from the deposition.

■ On this appeal, one objection raised by appellant is that permitting the reading from the depositions in the absence of the witnesses prevented defense counsel from having the witnesses available to ex-

amine them on the depositions, thereby violating the defendant's right to confront witnesses against him. No such objection was made at the trial and no such assignment of error is found in the motion for new trial. However, as defense counsel acknowledged in the course of his objection to the reading from the depositions, the witnesses were still available; he made no effort to require their attendance or to cross-examine them further. This objection is without merit.

Further objection is made on the grounds that the statements from the depositions were incompetent, irrelevant and immaterial, concerned matters upon which the witnesses had not been impeached, contradicted or examined on direct or cross-examination, were self-serving hearsay and an effort to bolster the witness's previous testimony.

The rule which has been followed in this state is that when impeachment of a witness is undertaken by confronting him at trial with inconsistent answers given by him on a deposition, the party calling the witness has the right to offer competent, relevant and material testimony from the deposition which rehabilitates the witness's trial testimony. State v. Phillips & Ross, 24 Mo. 475; State v. Talbott, 73 Mo. 347, 358; State v. Myers, 198 Mo. 225, 94 S.W. 242, 252–253; State v. Graves, 352 Mo. 1102, 182 S.W.2d 46, 52–53[8].

In this case, the impeachment was directed at the witness's identification testimony. The portions of Mrs. Diamond's and Mrs. Taff's depositions read showed: 1. Their opportunity to see and recognize the attacker. 2. The description of him then fixed upon their minds. 3. Their identification of him upon their next encounter at the police line-up. All of the deposition testimony read by the state was designed to show a consistency from the start in Mrs. Diamond's and Mrs. Taff's testimony, and thereby eliminate any doubt which might have arisen from the inconsistencies between their deposition testimo-

ny and their testimony at the trial. Although appellant now says that Mrs. Diamond and Mrs. Taff had not been impeached on the matters concerning which the state read from their depositions, the obvious thrust of the cross-examination based upon the depositions was impeachment of the witness's identification testimony. Appellant now minimizes the effect of the impeachment, but that was not his trial tactic. Having sought to discredit the identification testimony by use of the depositions, the appellant may not now complain of the state's use of such deposition to rehabilitate the witnesses. The use here made was permissible within the rules of the cases hereinabove cited and the trial court's ruling was not error.

Judgments affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., and HOLMAN, J., concur.

BARDGETT, J., concurs in result.