**STATE of Missouri, Respondent,**

**v.**

**William Anderson CROW, Jr., Appellant.**

**No. 56529.**

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1972.

Motion for Rehearing or Transfer to Court
En Banc Denied Nov. 13, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

W. H. S. O'Brien, Festus, and Hale W. Brown, Kirkwood, Court-Appointed attorneys of record for appellant.

FRED E. SCHOENLAUB, Special Judge.

Defendant was convicted of first degree murder and his punishment assessed by a jury at life imprisonment. Section 559.010, RSMo 1969, V.A.M.S. Motion to set aside the verdict and direct a verdict of acquittal or in the alternative to grant a new trial was overruled. Defendant asserts twenty points on this appeal.

Defendant was charged as a result of the strangulation death of Everett R. McGuire on the night of July 15, 1969, or in the early morning of July 16, 1969. McGuire's body was found by an acquaintance on the morning of July 16, 1969, at the bottom of the stairs leading from McGuire's kitchen to his basement, his head badly beaten, and with an electric cord binding his hands behind his back and another electric cord wrapped around his neck with a tire iron attached tourniquet fashion. Although there were multiple scalp wounds, none of them had caused brain injury which would result in death. The cause of death was established as being from "strangulation by ligature."

■ Citing Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, appellant first contends the jury was "illegally qualified on the issue of the death penalty," by exclusion from the jury of all veniremen who had any moral, religious or conscientious scruples against imposition of the death penalty. Defendant argues that a jury so drawn "must of necessity be recognized as a 'tough jury', as a 'jury of less mercy', as a 'conviction prone jury'." Witherspoon v. Illinois has numerous times been held to have no application when the jury does not assess the death penalty.

Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; State v. Pollard, Mo., 447 S.W.2d 249; State v. Franklin, Mo., 459 S.W.2d 314; State v. Quinn, Mo., 461 S.W.2d 812; State v. Richards, Mo., 467 S.W.2d 33; State v. Haynes, Mo., 482 S.W.2d 444 (adopted July 17, 1972). Appellant's "hanging jury" argument was considered and rejected by this court in State v. Quinn, supra.

■ Citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, appellant next contends his constitutional rights were violated by the police in obtaining a statement from him. Appellant was arrested by Olivette City Police Captain Robert Cole on July 18, 1969, in Normandy, Missouri, at approximately 4:15 in the afternoon. He was booked in Normandy and taken by car to Hillsboro, Missouri. Captain Cole rode in the back seat with appellant. During the trip Captain Cole advised appellant of his rights and asked him if he wished to make a statement. Appellant said he did not and no further questioning was conducted during the trip. Upon arriving at the Sheriff's Office in Hillsboro, appellant was turned over to Sheriff Buerger. The evidence conflicted as to the time questioning began, but it was commenced by Captain Robert Lowery of the Florissant, Missouri, police department, during which time he was permitted to talk with his mother, brother, and a close friend, Michael Hose. Appellant was again advised of his constitutional rights. He was permitted to talk by telephone to an attorney, after which he stated he had been advised by the attorney not to say anything. When again asked if he wanted to give a statement he said he would have to think about it. A few minutes later he indicated that he preferred to talk to Captain Cole. Captain Cole again advised appellant of his rights and asked appellant to read and sign a waiver of those rights. Appellant signed the waiver and then tore it up. He then changed his mind, signed another waiver of rights form, and gave a statement on tape to Captain Cole.

The tape was admitted in evidence, but because of its poor quality it was not played for the jury. Captain Cole was, however, permitted to testify from memory concerning the statement. He testified that appellant told him he took a tire iron from Mike Hose's car and put it beside McGuire's porch before going in. He told of homosexual activities between himself and McGuire, followed by a dispute concerning payment for his services. He stated he then went outside, got the tire iron, came back to the door and told McGuire he wanted to use the telephone. When McGuire turned his back and started back into the house he struck him in the back of the head with the tire iron. McGuire turned, started scuffling with him, he dropped the tire iron, recovered it and again struck McGuire, knocking him unconscious. He then felt McGuire's pulse and found him to be alive. He tied McGuire's hands behind his back, took McGuire's billfold, car keys and checkbook. He tried to call Mike Hose, but was unable to reach him. He checked McGuire's automobile, came back inside, packed two suitcases with antique guns, a clock, and other items, checked McGuire's pulse again, and left.

In Miranda v. Arizona, supra, the Supreme Court of the United States held: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." Interrogation of appellant did not cease even though at three different times he indicated that he wished to remain silent. Such action violated appel-

lant's constitutional rights, and the trial court erred in admitting the statement in evidence.

Defendant, however, voluntarily and of his own free will elected to testify in his own behalf. On direct examination he testified that he left the tire iron by McGuire's porch before going in. He further testified concerning his homosexual activities with McGuire and the argument that followed. He then left, decided to go back and call for someone to pick him up, taking the tire iron with him because of his fear of McGuire. He told McGuire he was leaving and wanted to get clothing he had left there since he had started "tricking" with McGuire some six months earlier. McGuire said he wasn't going to let him leave and turned toward a desk where appellant knew he kept three guns. He hit McGuire with the tire iron, McGuire turned and they started scuffling. McGuire started strangling him, he lost the tire iron, got away from McGuire, picked up the tire iron and hit McGuire again. McGuire went down. He checked McGuire's pulse and found it to be strong and steady. He further testified that McGuire was not unconscious, but didn't really know what was going on. He pulled a cord from an appliance and tied McGuire's hands behind him to prevent a further attack. He then packed his belongings, took McGuire's wallet, checked McGuire's pulse several times, and left in McGuire's automobile.

This testimony was nearly identical to and more detailed than the statement given to Captain Cole. Appellant has not shown any prejudice from the admission of Captain Cole's testimony. Any error in its admission in evidence was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; State v. McGee, Mo., 447 S.W.2d 270.

■ In Point 3 appellant contends he should have been permitted to show the capacity for violence possessed by the deceased. Appellant's defense was that he did not kill McGuire. He testified that he

struck McGuire only twice and left him with his hands tied behind him but alive and with a strong pulse. He denied strangling McGuire. Evidence that deceased bore the reputation of having a turbulent or violent disposition or character has been held competent where self-defense is alleged. State v. Parker, 358 Mo. 262, 214 S.W.2d 25; State v. Blair, Mo., 305 S.W.2d 435; State v. Hicks, Mo., 438 S.W.2d 215; State v. Duncan, Mo., 467 S. W.2d 866. In this case self-defense was not an issue and the trial court properly rejected such evidence.

Citing State v. Blair, supra, appellant further contends that the giving of Instruction No. 5 which allowed the jury to consider whether or not deceased was of a violent disposition, and appellant's knowledge thereof, magnified the court's error. In view of our above ruling, and the trial court's exclusion of such evidence, the giving of this Instruction was not required but it could not have harmed or prejudiced appellant.

In Points 4, 5, 6, 7, 8 and 9, dealing with alleged error in Instructions 1, 2, 3, 4, 6 and 7, appellant has failed to comply with Supreme Court Rule 84.04(e), V.A.M.R., which provides in part as follows: "If a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." We will, however, consider the matters set forth in these Points.

■ In Point 4 appellant alleges error by the trial court in reading Instruction No. 1 at the outset of the trial. This instruction dealt with the procedural aspects of the trial, the duties of jurors as triers of the facts, and an admonition to the jury not to discuss the case and to keep open minds until submission. No objection was raised when the instruction was read either to the giving of the instruction or to its contents. Counsel candidly admits that, "For a Defendant to loudly complain of a jury being so cautioned at the outset of a trial so as

to better the service of the jurors is to belabor a point." Although Section 546.070, RSMo 1969, V.A.M.S. provides for the court's instructions to the jury at the close of the evidence, appellant has not shown any prejudice in the reading of Instruction No. 1 at the beginning of the trial. Any error must be considered harmless.

■ In Point 5 appellant challenges the language, "did make an assault upon Everett R. McGuire with an electric cord and tire changing instrument", used in Instruction No. 2. Appellant contends such language constitutes a comment on the evidence, and that such language could be interpreted by the jury to direct a verdict of guilty on his testimony that he struck McGuire with the tire iron and bound his hands with an electric cord. The instruction, when read in its entirety, clearly directs the jury that it must further find that defendant choked and strangled McGuire and that McGuire died as a result of the choking and strangling. The instruction set forth each element of murder in the first degree.

■ In Point 6 appellant attacks Instruction No. 3 as containing an unnecessary reference to the Information. The instruction informs the jury that "the Information contains the formal statement of the charge, but it is not to be taken as any evidence of defendant's guilt." This language has been approved in State v. Copeman, 186 Mo. 108, 84 S.W. 942.

■ In Point 7 appellant assails Instruction No. 4 dealing with the credibility of witnesses, on the theory that, because of the conflicts between the testimony of appellant and witnesses Liscomb and Hose, paragraph two of the instruction "wipes the Defendant out of the jury room if the jury were to accept the admonition that all of witness' testimony may be rejected if any part is believed false." Paragraph two instructed the jury as follows: "In this connection you are further instructed that if you believe that any witness has knowing-

ly sworn falsely to any fact or facts material to the issues in this case, then you must reject such portion of the testimony as you believe to be false, if any, and you are at liberty to reject all other portions of such witnesses' testimony."

■ When there is a factual basis in the testimony of the witnesses the giving of such an instruction is discretionary with the trial court. State v. Abbott, Mo., 245 S.W.2d 876; State v. Hamilton, 304 Mo. 19, 263 S.W. 127; State v. Brown, Mo., 270 S.W. 275. The testimony of appellant conflicted not only with that of witnesses Liscomb and Hose, as admitted by appellant, but also with that of other State's witnesses. There was no error in giving the instruction. The wording of the instruction has been approved many times. See State v. Willard, 346 Mo. 773, 142 S.W.2d 1046, and cases cited.

■ In Point 8 appellant attacks Instruction No. 6 as being "simply a bad instruction." The instruction was as follows: "The Court instructs the jury that the State is not bound to prove its case by direct evidence; that is, by the testimony of a witness or witnesses who saw the act committed and identify the defendant as the person who committed the act for which he is on trial, but may prove his guilt by circumstantial evidence, provided the circumstances proven by the State are consistent with each other and wholly inconsistent with the innocence of the accused and incapable of explanation upon any other reasonable theory except that of his guilt and prove to you beyond a reasonable doubt that the defendant was present at the time of the commission of the offense, if you find an offense was committed, and that the defendant participated in the commission thereof."

In State v. Burke, Mo., 462 S.W.2d 701, quoting from State v. Armstrong, Mo., 361 S.W.2d 811, l. c. 818, this Court held: " ' * * * In any event, no certain and specific terminology is required in a circumstantial evidence instruction so long as

it advises the jury, in substance, that the circumstances proved must be consistent with each other and with the hypothesis that the defendant is guilty, and inconsistent with any theory of his innocence and with every reasonable hypothesis, except that of guilt.' " Instruction No. 6 meets this requirement. The specific language used was approved in State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701.

■ Appellant again attacks the giving of Instruction No. 1 at the outset of the trial as removing the admonition against speculation and conjecture too far from the giving of Instruction No. 6 for the jury to have recalled it. All of the instructions must be read and considered together, and as such they constitute a single charge. State v. Prigett, Mo., 470 S.W.2d 459(2). We cannot assume the jury ignored the content of Instruction No. 1, which it had in the jury room along with the other instructions.

■ In Point 9 Instruction No. 7 is challenged for omitting any direction as to how the jury could return a verdict of acquittal. As stated above, instructions must be read and considered together, and as such they constitute a single charge. State v. Prigett, supra. Instruction No. 2 clearly directs a verdict of acquittal unless the facts are found as set forth therein. Instruction No. 3 further instructs the jury it should acquit if a reasonable doubt exists as to defendant's guilt. A form of verdict for acquittal is found in Instruction No. 8. The jury was clearly advised as to the choices available.

■ In Point 10 appellant contends the trial court erred in failing to give instructions on second degree murder and manslaughter. "The general rule is that a presumption of murder in the second degree arises from an intentional killing of a human being by another where a deadly weapon is used by him at a vital part of the body, absent proof of other facts tending to show deliberation to raise such killing to first degree murder, or to show want or

premeditation and malice to reduce the killing to manslaughter, or to show that such killing was excusable or justifiable." State v. Williams, Mo., 442 S.W.2d 61; State v. Snow, 293 Mo. 143, 238 S.W. 1069. However, "when the circumstances show murder in the first degree and no lesser degree of homicide, the court is not required to instruct on lesser degrees." State v. King, Mo., 433 S.W.2d 825; State v. Taylor, 347 Mo., 607, 148 S.W.2d 802; State v. Holland, 354 Mo. 527, 189 S.W.2d 989.

Here, the State's evidence established McGuire's death as being from strangulation. Although he had been struck numerous times on the head these wounds did not cause his death. After the beating his hands were bound behind his back with an electric cord. Another electric cord was wound around his neck and tightened with a tire tool until he choked to death. Such circumstances show only murder in the first degree. Defendant testified that he struck McGuire twice with the tire tool because of fear that McGuire was going to get a gun. He further testified that after the two blows McQuire was not completely unconscious, but "tipsy", and that he bound his hands to prevent harm to himself if McGuire regained complete consciousness. He denied strangling McGuire, testifying he left him alive and with a strong pulse. The question for the jury was whether appellant, or some other person, wound the cord around McGuire's neck and tightened it with the tire tool until McGuire died. Under such circumstances instructions on second degree murder and manslaughter were not required.

■ In Point 11 appellant alleges error by the trial court in permitting the investigation team to be referred to as the "major case squad." This court cannot see where this reference could have prejudiced appellant. Such reference in no way touches upon appellant's guilt or innocence but rather refers only to the nature of the investigation demanded by the seriousness of the crime.

■ In Point 12 appellant alleges that a search warrant used to search appellant's apartment was issued on a false affidavit and that two items obtained in the search, a leather tag and a blood smeared pair of pants, should not have been received in evidence. The Motion to Suppress was not presented to the trial court until trial. Supreme Court Rule 33.03(a) 5 provides: "The motion to suppress evidence shall be filed before the commencement of the trial or hearing unless opportunity therefor did not exist or unless the defendant was not aware of the grounds for the motion . . . ."

Appellant contends that "the trial court just did not afford to the trial advocates sufficient time to proceed with the matter in a customary fashion . . . ." This contention is refuted by the record. The Information was filed on August 27, 1969. Trial commenced on July 20, 1970. Appellant had nearly eleven months between the filing of the Information and Trial, sufficient time in which to file his Motion to Suppress. The record further discloses no attempt by appellant to obtain additional time before trial to present such a motion. No allegation is made that appellant was not aware of the grounds for his motion during this time. The point is ruled against appellant.

■ In Point 13 appellant contends photographs of the scene and of deceased were prejudicially inflammatory and that the trial court erred in admitting them. He alleges that they had no probative value, that they were merely corroborative of other testimony, and that the gruesomeness must have affected some of the jurors.

In State v. Stevens, Mo., 467 S.W.2d 10, this court held: "The admission of a photograph of the body of the deceased in a homicide prosecution rests within the sound discretion of the trial court, and it is properly admitted when it tends to show some fact or circumstance material to the case, such as the nature and location of the

fatal wound, State v. Moore, Mo., 303 S.W.2d 60; or when it enables the jury to better understand the fact and the testimony of witnesses, State v. Thresher, Mo., 350 S.W.2d 1, or tends to corroborate, explain or clarify the testimony of witnesses, State v. Edwards, Mo., 435 S.W.2d 1. . . . It is not made inadmissible because witnesses may have orally described what is shown by the picture, State v. Spica, Mo., 389 S.W.2d 35, or because it presents a gruesome sight, State v. Moore, supra. If photographic views are shocking, when presenting an accurate picture, it is because the crime is one of that sort, whether described in words or pictures." The photographs were admissible in evidence as corroboration of the testimony of the State's witnesses who described the location and condition of deceased's body, the nature and location of his wounds, the binding of his hands, the manner in which he was strangled and the cause of his death. They also tended to refute appellant's contention that he struck deceased only twice and left deceased alive and semi-conscious on the kitchen floor. The trial court did not abuse its discretion in admitting them.

■ In Point 14 appellant contends the trial court erred in admitting his out of court statements before a prima facie case had been established. The State's evidence concerning the location of the deceased's body, the nature of his head wounds, the electric cord tightened with a tire tool around his neck, the pools of blood in his home, and the pathologist's testimony concerning the cause of death, clearly established the cause of death by a criminal agency of someone other than deceased. The corpus delicti was sufficiently proven independently of appellant's statements and they were properly admitted in evidence. State v. Hubbard, 1943, 351 Mo. 143, 171 S.W.2d 701.

■ In Point 15 appellant contends he should have been acquitted after the State's opening statement inasmuch as it did not establish sufficient facts to warrant submission of the cause. In State v. McAllister, Mo., 468 S.W.2d 27, this court held that the Prosecuting Attorney had the duty in his opening statement to "state his case," and thus in general advise the jury as well as the defendant of the facts relied on for a conviction. The Prosecuting Attorney told the jury that the case involved a charge of first degree murder, that the evidence would show that the victim of this murder was Everett R. McGuire, that defendant did feloniously with malice aforethought, premeditation and deliberation, kill Everett R. McGuire, and that he died as a result of these wounds and the strangulation. The statement adequately sets forth the State's case and advised the jury and defendant of the facts relied on for conviction.

■■■ In Point 16 appellant contends he was prejudicially restricted in cross-examination of witness Liscomb concerning whether he had been treated for mental illness or had ever masqueraded "about the streets of St. Louis and St. Louis County first as an Edwardian English fop and then as an Arabian sultan." The extent of cross-examination on collateral matters for the purpose of impeachment is largely within the trial court's discretion. State v. Cox, Mo., 352 S.W.2d 665, wherein it was also held that an attack on the credibility of a witness in a criminal case must be addressed directly to his reputation for truth and veracity. Cross-examination of witness Liscomb concerning his bizarre habits, and treatment at one time for mental illness, were not addressed to his reputation for truth and veracity. The trial court did not abuse its discretion in refusing it.

■ In Point 17 appellant contends the trial court erred in ordering the cause removed from Jefferson County, Missouri, to St. Louis County instead of to Washington County, a county within the same circuit as Jefferson County. Supreme Court Rule 30.01 provides for removal to "some other county in the same circuit," but further provides that "if it shall appear that the minds of the inhabitants of the

entire circuit are so prejudiced against the defendant that a fair trial cannot be had therein, then the case shall be removed, by like order, to another circuit in which such prejudice is not alleged to exist." Appellant cannot be heard to complain that his case was removed to a circuit where prejudice against him did not exist.

 In Point 18 appellant contends the trial court committed error in allowing witness Lowery to testify after refreshing his memory from a police report. The question of permitting a witness to refer to a writing in order to refresh his recollection is a matter for the trial court's discretion, reviewable only for abuse. State v. Robertson, Mo., 464 S.W.2d 15; State v. Bradley, Mo., 234 S.W.2d 556; State v. Merrell, Mo., 263 S.W. 118. In State v. Bradley this court further held, 234 S.W.2d l. c. 560: "If a reference to a memorandum 'sparks' a *present* recollection so that a witness can testify from independent resensing or revisualization of the event, the time when the memorandum was made is of little moment, because the probative force of the testimony of the witness is his independent present recollection of the event. On the other hand, if, having referred to a memorandum, the present recollection of the witness is not stimulated, the witness must necessarily rely upon his *past* recollection as recorded in the memorandum; and in such a situation the correctness and trustworthiness of the memorandum are of importance, because the faith reposed in the verity of the memorandum affords the probative force of the testimony of the witness."

The police report was prepared by one officer, not this witness, from notes turned in to him by each of the officers assigned to the case at the conclusion of his portion of the investigation. It was prepared at the direction of, and in the presence of,

witness Lowery who was acting as commanding officer of the Major Case Squad. The witness testified to the hundreds of cases he had investigated and his need to refresh his memory, but that he was testifying from his own recollection. The trial court did not abuse its discretion in permitting the witness to testify.

 In Point 19 appellant contends the trial court erred in not permitting him to testify concerning the comparative masculinity of himself and witness Michael Hose. He cites no authority for this point on the relevancy of such testimony and this court has found none. Furthermore, the point is not supported by the transcript. Although the court did sustain one objection by the State to a leading question concerning the masculinity of appellant and witness Hose, considerable other evidence was presented to the jury which gave a clear picture of the relationships and traits of appellant and all of his associates.

 In Point 20 appellant contends that the trial court committed error by placing him in an unfavorable light by requiring him to be sworn twice. This point is without merit for two reasons. No objection was made at the time appellant was sworn the second time, the question being raised for the first time on this appeal. The trial court will not be held to have committed error for a reason not presented to it. State v. Stevens, Mo., 467 S.W.2d 10; State v. Davis, Mo., 251 S.W.2d 610; State v. Hampton, Mo., 275 S.W.2d 356. In addition, appellant has not shown that he was prejudiced in the eyes of the jury. He was first sworn during a hearing when the jury was not present. He was sworn only once in the presence of the jury.

The judgment is affirmed.

All of the Judges concur.